# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

VICTORIA J. NIEDER,

    Plaintiff,

v.

JACKSON NATIONAL LIFE
INSURANCE COMPANY,

    Defendant.

No. 10 C 6766
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

The plaintiff, Victoria Nieder ("Victoria"), is seeking to recover the death benefit on her late ex-husband's life insurance policy from Defendant Jackson National Life Insurance Company ("Jackson National"). Neither Victoria nor her ex-husband, Timothy Nieder ("Timothy"), received any notice of the policy entering a grace period after missing the July 5, 2009 premium or that the policy had lapsed at the end of that grace period on August 5, 2009. Timothy died January 13, 2010. Defendants now move to dismiss plaintiff's complaint pursuant to FRCP 12(b)(6). The motion to dismiss is granted for the reasons articulated below.

**I. STATEMENT OF FACTS**

In July 2000, Timothy was issued a life insurance policy with a face value of one million dollars from Jackson National, an insurance company based in Michigan.[1] Frank Glienna was the agent through whom the policy was purchased. Victoria was named as the only beneficiary.

---

[1] Although the plaintiff's complaint states that the policy was for $750,000, as shown in the copy of the policy provided by Defendants with their memorandum, the policy was actually for one million dollars. Where the facts in plaintiff's complaint conflict with the policy, the policy will take precedent. *Venture Assocs. Corp. v Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

Timothy paid annual premiums of $1,135 which were due by July 5 of each year, but Jackson National at times accepted payments thirty to sixty days late. Although the Nieders lived at 1005 S. Hamlin, Park Ridge, Illinois, prior to December 1, 2001, the policy erroneously stated that they lived at 1005 N. Hamlin, Park Ridge, Illinois.[2] Timothy signed the policy which contained the incorrect address. Victoria tried numerous times to change the address but to no effect.[3]

On December 1, 2001, the Nieders moved to 827 S. Hamlin, Park Ridge, Illinois, and informed Frank Glienna, their agent, of their change of address. The address was never changed and Victoria ceased making requests to change the address in 2007 or 2008 after at least three attempts.

In December 2009, Victoria and Timothy divorced. On January 13, 2010, Timothy passed away. Around the time of January 26, 2010, Victoria sent a handwritten letter along with Timothy's death certificate to Jackson National seeking the death benefit under the life insurance policy as she was still the sole beneficiary. On February 5, 2010, Jackson National sent Victoria a letter informing her that the death benefit would not be paid since the policy had lapsed due to non-payment of the premium. The letter was addressed to Victoria Nieder at 1005 N. Hamlin, Park Ridge, Illinois, and was not received by Victoria until a postal worker found the letter and recognized Victoria's name in June 2010. The Nieders never received either a premium notice or notice of lapsed policy at 827 S. Hamlin. On June 14, 2010, Victoria sent Jackson National a check for $1,135 after receiving the misaddressed February 5, 2010 letter. Jackson National accepted and cashed the check from

---

[2] This was established by the application for the policy that Jackson provided with their memorandum.

[3] Jackson National, however, does claim that it was never informed of a change of address. The February 5, 2010 letter to Victoria stated that Jackson National was never informed of any address change.

Victoria.[4] All correspondence between Jackson National and Timothy from July 15, 2009 and August 5, 2009 was sent to 1005 N. Hamlin, but, none of these letters was received by either Victoria or Timothy.

**II. STANDARD OF REVIEW**

Defendant now moves to dismiss the ccomplaint, pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) requires that I analyze the legal sufficiency of the complaint, and not the factual merits of the case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). I must take all facts alleged in Plaintiff's complaint as true and draw all reasonable inferences from those facts in favor of the Plaintiff. *Caldwell v. City of Elwood*, 959 F.2d 670, 671 (7th Cir. 1992). Plaintiff, for her part, must do more than solely recite the elements for a violation; she must plead with sufficient particularity so that her right to relief is more than mere conjecture. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead her facts so that, when accepted as true, they show the plausibility of her claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plaintiff must do more than plead facts that are "consistent with Defendants' liability" because that only shows the possibility, not the plausibility, of her entitlement to relief. *Id.* (internal quotations omitted).

---

[4] This fact is disputed by Jackson National, which submitted an affidavit in which Elizabeth Makara stated that Jackson National issued a policy refund to Victoria Nieder on July 19, 2010 (Exhibit A, Affidavit of Elizabeth Makara). A copy of the refund is included as Exhibit 1.

**III. DISCUSSION**

Plaintiff alleges three counts in her complaint: In Count I, she seeks a declaratory judgment that she is entitled to the benefit under the life insurance policy issued to her ex-husband by Jackson National; in Count II, plaintiff alleges a third-party beneficiary claim; and Count III, which alleged that Defendant acted in bad faith to settle the claim, has been dismissed by stipulation.

A. Declaratory Judgment

Plaintiff alleges that she is entitled to receive the death benefit of her ex-husband's life insurance policy, claiming that, (1) due to deficient notice, Defendant was unable to declare the policy lapsed; (2) Defendant waived its right to declare the policy lapsed by cashing a check for a late premium; and (3) Defendant should be estopped from declaring the policy lapsed.

    1. Jackson National was entitled to declare the policy lapsed even though it had failed to provide proper notice pursuant to 215 ILCS 5/234(1).

Though Plaintiff argues that Defendant cannot declare the policy lapsed due to Jackson National's failure to provide notice, Defendant contends that this is irrelevant under 215 ILCS 5/234(1), which states:

> No life company doing business in this State shall declare any policy forfeited or lapsed within six months after default in payment of any premium installment or interest or any portion thereof, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due of any premium, installment or interest, or any portion thereof, required by the terms of the policy to be paid, within six months from the default in payment of such premium, installment or interest, unless a written or printed notice stating the amount of such premium, installment, interest or portion thereof due on such policy, the place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed with the required postage affixed, to the person whose life is insured, or the assignee of the policy, (if notice of the assignment has been given to the company) at his last known post office

address, at least fifteen days and not more than forty-five days prior to the day when the same is due and payable, before the beginning of the period of grace…. 215 ILL COMP. STAT. ANN. 5/234(1) (West 2011).

Pursuant to the statute, Defendant argues that it was entitled to declare the policy lapsed so long as the six-month statutory period had passed.

Plaintiff argues that the six-month statutory period should run from the last day of the grace period, August 5, 2009, and not the date of default. Plaintiff also argues that since Jackson National failed to properly notify her of the policy lapse, § 234(1) mandates that Jackson National pay the death benefit of the life insurance policy of which she was the sole beneficiary whether or not the statutory period runs from the last day of the grace period. Alternatively she argues that even if the notices were received by Timothy, Jackson National would not be allowed to declare the policy lapsed until February 7, 2010.[5] Finally, Plaintiff argues that Defendant extended the default date according to statements made in its notices. Plaintiff's arguments fail under Illinois law.

In interpreting a statute, I first look to the plain language of the statute. *US v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008). The court assumes that the language of the statute accurately expresses the intent of the legislature. *Id.* at 397. The same is true of the interpretation of an insurance policy: so long as the language of the policy is clear and unambiguous, it will be interpreted according to the plain language of the policy. *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998). The court must ascertain

---

[5] This appears to be a miscalculation on the part of the plaintiff. The premium due date was not July 7, 2009, as plaintiff originally contends, but was in fact July 5, 2009. Six months from July 5, 2009, is January 5, 2010.

the parties' intentions and reasonable expectations as expressed in the policy. *Id*. at 1169 (citing *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 669 (Ind. 1997)).

Section 234(1) unambiguously states that a life insurance policy may not be forfeited or declared lapsed within six months of the date of default unless a written or printed notice is received by the person whose life is insured or the assignee of the policy. To determine that the date of default was effective, I defer to the terms of the policy. *Nelson v. Old Line Life Ins. Co.*, 792 N.E.2d 796, 800 (Ill. App. Ct. 2003). In this case, the policy issued by Jackson National to Timothy Nieder states that "any premium after the first which is not paid on or before the date it becomes due is in default." (Policy, 4). Plaintiff's argument that the six-month statutory period should run from the last day of the grace period is contrary to both the plain language of the statute and current Illinois law. Section 234(1) specifies that the policy may not be forfeited or lapsed within six months of the date of default, directly contradicting Plaintiff's claims that it should run from the end of the grace period as the policy defines the date of default separately from the end of the grace period. Under Illinois law, the six-month statutory period and the grace period provided by insurance companies serve two distinct functions. *Nelson*, 792 N.E.2d 796, 800. The six-month statutory period called for by § 234(1) is triggered when the insurer fails to provide proper notice. *Id.* at 800. Since Jackson National failed to provide proper notice, § 234(1) would have precluded the company from declaring the policy lapsed within six months from the date of default, but once the six-month statutory period passed, Jackson National was able to lawfully cancel the policy. *Id*. at 799; *First Nat'l Bank v. Mutual Trust Life Ins. Co.*, 522 N.E.2d 70, 72 (Ill. 1988) (holding that a

6

policy is subject to forfeiture even when insurer failed to give proper notice when it has remained in default for six months plus any extended coverage provided by policy).

A grace period does not constitute extended coverage. *Nelson*, 792 N.E.2d 796, 799 (noting that research revealed no case in which the thirty-one day grace period constituted extended coverage). Section 234(1) notice only applies when an insurer wishes to terminate the policy within six months of default of payment. *Clarin Corp. v. Massachusetts General Life Ins. Co.*, 44 F.3d 471, 477 (7th Cir. 1994). Accordingly, because the policy was terminated more than six months after default, it is immaterial that notice was not received or deficient. *Id.* at 477. Six months after the date of default as defined by the policy would have been January 5, 2010, which was eight days before Timothy's death. Jackson National was free to terminate the policy at the time it did so, with or without notice.

Even if this had not been the case, the insurer is not required to show that notice was received by the policy holder, but rather only that a legally sufficient notice was addressed and mailed. *Spinelli v. Monumental Life Ins. Co.*, 476 F.Supp.2d 898, 909 (N.D. Ill., 2007). The plaintiff submitted copies of notices sent to Timothy's address as it appeared in Defendant's files, even if that address was in fact erroneous. The initial application signed by Timothy listed his address as 1005 N. Hamlin. However, if a signature is provided, it verifies the truthfulness of the information and gives cause for the insurance company to rely on that information. *Wachel v. First Colony Life Ins. Co.*, WL 73647, 20 (N.D. Ind., 2008). The insurance company does not have an obligation to

investigate beyond the certified representations in an application. *Id.* at 20. Consequently, Defendant sent legally sufficient notice to the policyholder's last known address. *Hotaling v. Chubb Sovereign Life Ins. Co.*, 241 F.3d 572, 580 (7th Cir. 2001).

Plaintiff also alleges that Defendant extended the default date described in the policy since both notices sent by Jackson National indicated that the policy would not end until August 5, 2009. Plaintiff looks to *Reddick v. Globe Life & Accident Insurance Co.*, 596 So.2d 435 (Fla. 1992), to support her allegation. In *Reddick*, the insurer, Globe, did not receive the premium payment due on December 1, 1988. On January 5, 1989, Globe sent the policyholder a letter which stated: "Send in your payment, along with the attached notice, and the benefits of your policy will remain in full force. We must receive your payment by January 20, 1989." The final notice sent with the letter stated: "Payment is needed so your insurance will not lapse." The insured died on January 17, 1989, and the policyholder did not send in the premium payment until January 20, 1989, but it was not received until later. Globe denied coverage. The Supreme Court of Florida found that Globe's premium due notice clearly indicated that the policy was still in effect even though by Globe's own terms the policy had lapsed January, 5, 1989 and, thus, it could have been easily understood that coverage existed in the interim if a loss occurred before January 20, 1989 since the letter did not make clear what would happen to a claim arising before January 20 if no payment were received by that date. *Reddick*, 596 So.2d 435, 437.

Plaintiff here similarly does not allege any action by Defendant that led her to believe the defendant had extended the default date other than the language of the notices

sent by Jackson National. However, unlike in *Reddick*, the language of the notices in question is not ambiguous. Although it is true that, according to Illinois law, ambiguities in the provisions of an insurance policy will be construed against the insurer, "a court should not search for ambiguity where none exists." *River*, 160 F.3d 1164, 1170. The notices sent by Jackson National simply stated that coverage would not lapse until the end of the grace period, in accordance with its policy. (Policy, 4). There is no contradiction in the date of default. This is different than in *Reddick*, where the notice could reasonably have led Plaintiff to believe that coverage extended beyond the grace period end date of January 1, 1989, to January 20, 1989. *Reddick*, 596 So.2d 435, 437.

>2. Defendant did not waive its right to assert that the policy had lapsed after cashing a check for the missed premium sent by Plaintiff.

Plaintiff maintains that Jackson National waived its right to declare the policy lapsed once the company cashed a check for a late premium. Defendant disputes this on two grounds.. First, Defendant argues that Plaintiff failed to allege waiver as required by Illinois law. Next, Defendant contends that Plaintiff failed to satisfy any of the requirements set forth by Jackson National's policy to reinstate a policy in default, and also claims that Plaintiff's conclusory allegations should be disregarded by the court.

Under Illinois law, a waiver "arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 282 (Ill. 2004). In cases where an insurer was found to have waived declaring a policy lapsed after accepting a late payment, it was not simply due to the negotiation or disposition of the check, but also due to the fact that the check was held

9

for a considerable amount of time or the insurer "manifested its intentions to reinstate the policy." *See, e.g., McMillon v. Old Republic Life Ins. Co.*, 342 N.E.2d 246, 248-49 (Ill. App. Ct. 1975). In order for the acceptance of a late payment to constitute a reinstatement of the policy, the insurer must take some action that is inconsistent with the claim that it did not accept the payment. *Id.* at 249. Conduct that can indicate waiver includes statements, acts, or courses of conduct which indicate that the insurer considered the policy as still existing despite the fact that it had lapsed. *Times Ins. Co. v. Vick*, 620 N.E.2d 1309, 1312 (Ill. App. Ct. 1993). In the case at hand, however, there was nothing beyond the alleged cashing of the check which indicated the policy was reinstated. Here, Plaintiff can show only that there was an automatic deposit, but this is not enough. *McKinney v. Country Mut. Ins. Co.*, 507 N.E.2d 940, 941 (Ill. App. Ct. 1987) (holding that the initial cashing of a premium check prior to termination date "did not constitute approval or acceptance of offer by plaintiff to purchase insurance from defendant").

Further working against Plaintiff is the fact that Jackson National has submitted evidence that they did in fact refund the check and that it was simply sent to the wrong address. (Exhibit A, Policy Refund, Affidavit of Elizabeth Makara). An insurer automatically depositing a late payment and promptly refunding it does not constitute a waiver of the right to declare policy lapsed. *McMillon*, 342 N.E.2d 246, 249. Additionally, Plaintiff failed to meet any of the requirements for reinstatement since she failed to pay interest on the late premium, or provide proof of the insurability of the insured. Both are required by the terms of the policy in order reinstate a lapsed policy. (Policy, 4). Here, Jackson National received none of its requirements for reinstatement,

and in fact could not have received proof of insurability since a deceased person is not insurable. *See Spinelli*, 476 F.Supp.2d 898, 910 (noting that insurer can seek rescission of the policy when the insurer requires a reinstatement application and sufficient reinstatement payment after the close of the grace period). Plaintiff has failed to show that Defendant waived the right to declare the policy lapsed by cashing the late premium.

3. <u>Defendant should not be estopped from declaring the policy lapsed.</u>[6]

Plaintiff contends that there are two grounds on which Defendant should be estopped from declaring the policy lapsed: (1) neither Plaintiff nor her ex-husband received any notices from Jackson, and (2) Defendant sometimes accepted premium payments thirty to sixty days late. Plaintiff also draws attention to cases where an insurer has been prevented from declaring a policy lapsed for failure to send notice to the owner of the policy as well as the insured Defendant, however, argues that Plaintiff does not allege any actions or statements by Jackson National which could have misled her and thus fails to establish estoppel.

The focus of estoppel is on the conduct of the insured in response to the actions of the insurer. *Lumbermen's Mut. Cas. Co. v. Sykes*, 890 N.E.2d 1086, 1097 (Ill. App. Ct. 2008). In the insurance context, insured must show that: (1) he was misled by the acts or statements of the insurer or its agent; (2) he relied on those representations; (3) his reliance was reasonable; and (4) he suffered a detriment or prejudice based on the reliance. *Id.* at 1101.

---

[6] Plaintiff improperly raised the issue of estoppel in her Response and not in her complaint. *Rosenbaum v. Travelbyus.com. Ltd.*, 299 F.3d 657, 660 (7th Cir. 2002) (only plaintiff's complaint may be considered on a motion to dismiss).

The fact that Plaintiff did not receive any notice from Jackson does not prevent Defendant from declaring the policy lapsed. Plaintiff cannot argue that she was misled by the fact she never received notice from Jackson National since, by her own admission, she was still aware of when the premiums were due. In paying the premiums owed, Plaintiff did not rely on any representations of Defendant, but rather on her own system of reminders to alert her when payments were due. Plaintiff also cannot claim that she relied on premium due notices from Jackson National to make timely payments since she admits she never received any such notice. If Plaintiff had relied on the defendant's regular due premium notices, but had missed the last premium payment because Defendant had failed to give regular notice, Plaintiff may have had an estoppel claim. *See, e.g., Carfagnini v. Service Life Ins. Co. of Omaha*, 274 A.2d 303, 305 (N.J. Super. Ct. App. Div. 1971) (cited approvingly in *Fuchsen v. Prudential Ins. Co. of Am.*, 2002 WL 596356 (N.D. Ill. 2002), a case controlled by Illinois law). However, this simply was not the case here as Plaintiff did not rely on Defendant's regularly mailed premium due notices.

Similarly, Defendant's acceptance of payments thirty to sixty days late does not provide grounds for estoppel. Even if Plaintiff did in fact reasonably rely on the acceptance of such late payments, the 2009 premium was mailed to Jackson National eleven months late, far beyond the thirty to sixty-day time frame in which late payments had previously been accepted. There was nothing about Defendant's conduct which would have led Plaintiff to believe that Jackson National was willing to accept payments nearly a year past due. Accepting payments thirty to sixty days late without requiring reapplication is in line with Jackson National's policy and the lapse notice stated as such. The lapse notice sent on August 5, 2009, provided that Timothy had an additional thirty

one days after the end of the grace period to send in his payment without needing to satisfy the reapplication requirements of the policy. Actions such as accepting late payments, so long as they are done pursuant to valid policy referred to in the insurance policy do not constitute waiver. *Time*, 620 N.E.2d 1309, 1314. Furthermore, even when an insurer has been estopped from asserting a suspension of coverage in other jurisdictions, it has been due to the fact that the insurer accepted a partial payment with no notice of the suspension and continued to treat the policy as if it were still in effect. *See, e.g.*, *Von Uhl v. Trempealeau County Mut. Ins. Co.*, 33 Wis.2d 32, 41 (1966). This was not so in the case at hand, where although insurer cashed a check, it made clear in letters to Plaintiff that the policy was not still in effect and did not treat it as being in effect. Subsequently, Plaintiff fails to allege that a reasonable reliance on Defendant's pattern of accepting late premiums led her to believe that Jackson National would neither declare a default on July 5, 2010, nor provide coverage at Timothy's death, which occurred on January 13, 2010.

Plaintiff also implies that there may be an agency relationship on the part of Frank Glienna to Jackson National. If Plaintiff is able to show that Glienna was an agent of the insurer, Glienna's knowledge of the Nieders' change of address may be chargeable to Defendant. *See Bellmer by Bellmer v. Charter Sec. Life Ins. Co.*, 488 N.E.2d 1338, 1342 (Ill. App. Ct. 1986). However, it is not enough for a plaintiff to simply plead the legal conclusions of agency. *Williams v. Ford Motor Co.*, 990 F.Supp. 551, 554 (Ill. N.D. 1997). "The test of agency is the existence of the right to control the method or manner of accomplishing a task by the alleged agent, as well as the agent's ability to subject the principal to liability." *Wargel v. First Nat. Bank of Harrisburg*, 460 N.E.2d 331, 334 (Ill.

App. Ct. 1984). An agency relationship can be established when an agent has either actual authority to act on principal's behalf or has the apparent authority of the principal. *Williams*, 990 F.Supp. 551, 555. Plaintiff has not alleged any specific grant of authorization to perform a particular act with some acquiescence by the agent and some control by the principal to show actual agency. *Id*. at 555. The elements of apparent agency are that (1) the principal consented to or knowingly acquiesced in the agent's exercise of authority, (2) based on the actions of the principal or agent, the third person reasonably concluded that the party was an agent of the principal, and (3) the third person justifiably relied on the agent's apparent authority to his detriment. *Id*. at 555. Plaintiff has only asserted that Glienna was her Jackson National agent, which is not enough to establish a true agency relationship.

Additionally, the cases cited by Plaintiff in support of her position are distinguishable from the case at hand. Two of the holdings were merely that failure to provide the owner of an insurance policy with notice precludes the company from declaring the policy lapsed during the six-month statutory period following the date of default as required by § 234(1) in such a situation. *DC Elec., Inc. v. Employers Modern Life Co.*, 413 N.E.2d 23 (Ill. App. Ct. 1980). *Talmage v. Union Cent. Life Ins. Co.*, 43 N.E.2d 575 (Ill. App. Ct. 1942). In *Bellmer by Bellmer v. Charter Sec. Life Ins. Co.*, the agent knew of the divorce of the insured and the policy owner and also knew that they lived apart. *Bellmer*, 488 N.E.2d 1338, 1342. There is no similar allegation by Plaintiff in the case at hand. Additionally, in *Bellmer*, there was evidence that Defendant had a custom of sending notice to both insured and owner, but felt that custom was adequately satisfied by addressing the notice to insured "c/o" the owner. *Bellmer*, 488 N.E.2d 1338,

14

1343. There is no evidence Jackson National had a similar policy. In fact, Plaintiff in this case does not even appear to be the owner of the policy as Timothy had left the "Owner" section of his application blank, indicating that the insured was also the owner of the policy. (Exhibit 1, Life Application, 1).

For the foregoing reasons, Plaintiff fails to show that Defendant should be estopped from declaring the policy lapsed.

### B. THIRD PARTY BENEFICIARY CLAIM

A third-party beneficiary contract has three requirements: (1) that the intent to benefit the third party be clear; (2) that the contract impose a duty on one of the contracting parties in favor of the third party; (3) that the performance of the terms necessarily render to the third party a direct benefit intended by the parties to the contract. *Donald v. Liberty Mut. Ins. Co.*, 18 F.3d 474, 481 (7th Cir. 1994). Though it does seem fairly clear that the life insurance policy taken out by Timothy Nieder satisfies these requirements, there still remains the question of whether or not the policy was valid at the time of Timothy's death. Because I find that it was not, Plaintiff fails to show that any valid contract existed at the time of Timothy's death, and her third-party beneficiary claim must fail. *Rogalla v. Christie Clinic, P.C.*, 794 N.E.2d 384, 388 (Ill. App. Ct. 2003) ("To recover as a third-party beneficiary, plaintiff must plead facts that would establish the contract was breached.").

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted.

ENTER:

_____
James B. Zagel
United States District Judge

DATE:  August 22, 2011